```
UNITED STATES DISTRICT COURT                          USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                         DOCUMENT
                                                      ELECTRONICALLY FILED
------------------------------------------------------X  DOC #:_____
                                                   :  DATE FILED: 7/16/2019
AMBAC ASSURANCE CORP.,                             :
                              Plaintiff,           :  18 Civ. 5182 (LGS)
                                                   :
             -against-                             :  OPINION AND ORDER
                                                   :
U.S. BANK NATIONAL ASSOCIATION,                    :
                              Defendant.           :
------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

This case arises out of the duties of Defendant U.S. Bank as trustee of the Harborview Morgan Loan Trust (the "Trust"), a residential mortgage-backed securities ("RMBS") trust backed by loans that Countrywide Home Loans Inc. ("Countrywide") originated. Plaintiff Ambac Assurance Corp. ("Ambac") issued a financial guaranty insurance policy to the Trust for the benefit of certain certificate holders. Ambac sues for a declaratory judgment that (a) an Event of Default occurred under the Master Mortgage Loan Purchase and Servicing Agreement ("MMLPSA"), (b) the Event of Default has continued to the present and (c) U.S. Bank and its Officers have actual knowledge of the occurrence and continuance of the Event of Default (Count One); a declaratory judgment that U.S. Bank must account for and distribute recoveries under the Pooling Agreement ("PSA") (Count Two); breach of contract by U.S. Bank for accepting an unreasonably low settlement with Countrywide and Bank of America and staying the New York action for over a year and a half (Count Three); breach of contract by U.S. Bank for failing to account correctly for recoveries (Count Four); and breach of fiduciary duty by U.S. Bank (Count Five). Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, Counts One, Two, Three and Five are dismissed. Defendant's motion to dismiss is denied as to Count Four.

## I. BACKGROUND

The following facts are taken from the Complaint and exhibits attached to the Complaint, and are accepted as true for purposes of this motion. *See Duplan v. City of New York*, 888 F.3d 612, 617 (2d Cir. 2018).

This action arises out of U.S. Bank's responsibilities as trustee of the Trust. The Trust aggregated a pool of mortgage loans and issued securities backed by cashflows from those mortgage loans to investors, known as certificate holders. Certificates were divided into classes, with each class of certificates entitled to a different payment priority.

Countrywide originated the mortgage loans backing the Trust. It sold and assigned its interests in the mortgage loans to Greenwich Capital Financial Products, Inc. ("GCFP") pursuant to the MMLPSA. In the MMLPSA, Countrywide made dozens of representations and warranties about the quality of the mortgage loans and was obligated to repurchase any loan that did not comply with the representations it made for the Trust's benefit. GCFP conveyed a pool of loans acquired under the MMLPSA to Greenwich Capital Acceptance ("GCA") under the Mortgage Loan Purchase Agreement ("MLPA"). GCA then transmitted the loans to the Trust through the PSA between GCA, GCFP and U.S. Bank. The MLPA and PSA assigned to U.S. Bank the right to enforce remedies against Countrywide for any breach of the representations and warranties.

On August 31, 2005, Ambac agreed to provide a financial guaranty insurance policy to certificate holders, under which Ambac agreed to make payments to insured certificates in the event that the cashflow from the underlying mortgage loans was insufficient.

As trustee, U.S. Bank was required to enforce Countrywide's repurchase obligations. Under the PSA, an Event of Default was defined as the "failure on the part of [Countrywide]

duly to observe or perform in any material respect any other of the covenants or agreements on the part of [Countrywide] set forth in this Agreement which continues unremedied for a period of thirty-days . . . after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to [Countrywide] by the Purchaser or by the Custodian."  If an Event of Default occurred, U.S. Bank assumed heightened duties to "use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs."  Beginning on May 6, 2011, U.S. Bank sent Countrywide written demands to repurchase breaching mortgage loans in accordance with Countrywide's obligations under the MMLPSA.  Countrywide failed to timely cure the breach or repurchase the loans.

On August 29, 2011, U.S. Bank, acting as trustee, filed suit against Countrywide and its successors (Bank of America) in New York state court (the "New York Action") seeking damages for Countrywide's failure to comply with the representations and warranties made in the MMLPSA.  In the New York Action, U.S. Bank alleged that Countrywide breached its representations and warranties with respect to 87% of liquidated loans.  In December 2016, Countrywide proposed a settlement of $56.96 million -- which U.S. Bank and Countrywide represented to be equal to 15% of the estimated lifetime losses of the Countrywide loans in the Trust -- and U.S. Bank agreed to stay the New York Action.

On January 20, 2017, Ambac filed suit in federal district court in New York to enjoin U.S. Bank from accepting the settlement offer (*U.S. Bank I*), arguing that acceptance would breach U.S. Bank's obligations to Trust beneficiaries.  After Ambac filed suit, Countrywide increased the settlement offer to include up to $10 million to reimburse the Trust for attorneys' fees.  On March 6, 2017, U.S. Bank initiated a trust instruction proceeding ("TIP") in Minnesota state court.

In *U.S. Bank I*, U.S. Bank moved to dismiss and argued that the Minnesota TIP required the district court to abstain from ruling on Ambac's claims. Judge Sidney Stein denied the motion to dismiss. After Judge Stein's ruling, U.S. Bank filed an amended petition in the Minnesota TIP stating that it intended to reject Countrywide's settlement offer. On reconsideration, Judge Stein concluded that Ambac's claims were not yet ripe for review because Ambac had alleged a potential rather than a current breach of U.S. Bank's duties and U.S. Bank had not yet accepted the settlement with Countrywide. *Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, No. 17 Civ. 446, 2018 WL 485976, at *4 (S.D.N.Y. Jan. 18, 2018). The New York Action is stayed pending the outcome of the Minnesota TIP.

On June 1, 2018, U.S. Bank disclosed in the Minnesota TIP that it had accepted a settlement offer of $94 million -- $84 million to settle the claims and $10 million to reimburse the Trust for litigation expenses. The settlement agreement is conditioned on the Minnesota Court's approval.

## II. STANDARD

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citations and quotation marks omitted); *accord Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 472 (S.D.N.Y. Nov. 5, 2018). "The plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that it has standing to sue," and the Court accepts as true "all material allegations of the complaint and construe[s] the complaint in favor of the complaining

4

party." *Cortlandt St.*, 790 F.3d at 417 (citations, quotation marks and alterations omitted); *accord Rotberg*, 345 F. Supp. 3d at 472.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. at 1547 (citing *Lujan*, 504 U.S. at 560–61). At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "The Supreme Court has repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

5

## III. DISCUSSION

### A. Breach of Contract (Count Three) and Breach of Fiduciary Duty (Count Five)

Count Three alleges that U.S. Bank breached its contractual duties under the PSA to the Trust, Ambac and certificate holders by "accept[ing] an unreasonably low settlement" with Countrywide and Bank of America on the Trust's behalf; releasing the Trust's "valuable claims against Countrywide and Bank of America"; agreeing to stay the New York Action for over a year and a half; and filing a "wasteful" TIP at the Trust's expense. For the same reasons, Count Five alleges that U.S. Bank breached its fiduciary duties to the Trust, Ambac and certificate holders. These claims are not justiciable and are therefore dismissed.

The Complaint does not allege any non-speculative "concrete or imminent" injury sufficient to confer standing with respect to the breach of contract and breach of fiduciary duty claims based on U.S. Bank's acceptance of the settlement. *See Clapper*, 785 F.3d at 800; *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n. 8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical."); *accord Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). Here, the alleged injury depends on the Minnesota court's approval of the settlement agreement. The Minnesota court has not yet ruled, and it would be inappropriate for this court to speculate about the outcome of the Minnesota proceedings. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment . . . it is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case.") (internal quotation marks omitted)); *accord Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d

568, 580 (S.D.N.Y. 2018). The Article III requirement of "impending" injury is not satisfied where, as here, the claim of harm is based on hypothetical decisions of independent actors. *Id*. To the extent that Ambac's breach of contract and breach of fiduciary duty claims are based on U.S. Bank's acceptance of the settlement agreement, they are dismissed.

The Complaint alleges injury based on U.S. Bank's agreement to stay the New York Action for over a year and a half and U.S. Bank's decision to file a "wasteful" TIP. These claims are also too speculative to satisfy the injury requirement for Article III standing. The Complaint asserts that U.S. Bank's agreement to stay the New York Action harmed Ambac by "diminishing the value of the Trust's claims against Countrywide and Bank of America" and "signaled weakness and a reluctance to see the case through to judgment." The Complaint alleges that Ambac is further harmed by the stay because "witnesses' memories can fade, experts must re-familiarize themselves with the subject matter of opinions formed years earlier, and law firms experience turnover that increases the costs of litigation." None of these allegations constitute cognizable injury. It is too speculative to assume that U.S. Bank would have obtained a favorable outcome in the New York Action, or that rejecting the stay would have strengthened U.S. Bank's bargaining position. *See Clapper*, 568 U.S. at 413; *see also Bakal v. U.S. Bank Nat'l Ass'n*, 747 F. App'x 32, 36 (2d Cir. 2019) (summary order) (holding that allegations of defendant's failure to act "expeditiously" in enforcing obligations under the PSA were too "conclusory" to sustain a claim for damages). Similarly, the Complaint's allegation that U.S. Bank's "wasteful" spending on the Minnesota TIP provides no benefit to the Trust and "will result in additional legal fees" is premature and speculative because the outcome of the Minnesota TIP is not yet clear. Accordingly, the alleged injuries resulting from the stay of the New York Action and initiation of the Minnesota TIP do not confer standing.

### B. Declaratory Judgment (Count One)

Ambac seeks a declaratory judgment that an Event of Default occurred under the PSA, such Event of Default has continued to the present, and U.S. Bank and its officers have actual knowledge of the occurrence and continuance of such Event of Default. The Complaint alleges that an Event of Default under the PSA occurred when Countrywide "breached" loan-level representations and warranties under the PSA as to numerous loans. The significance of the declaration is that the occurrence of an "Event of Default" triggers fiduciary obligations on the part of U.S. Bank under the PSA. An Event of Default and U.S. Bank's resulting fiduciary obligations are a factual predicate for Counts Three (breach of contract) and Five (breach of fiduciary duty).

Ambac's request for declaratory relief is denied. The Declaratory Judgment Act, by its express terms, vests a district court with discretion to exercise jurisdiction over a declaratory action "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). In order to decide whether to entertain an action for declaratory judgment, district courts consider the so-called *Dow Jones* factors:

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty . . . (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata, (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court, and (5) whether there is a better or more effective remedy.

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012) (internal quotation marks omitted) (citing *Dow Jones & Co. v. Harrods Ltd.*, 346

F.3d 357, 359 (2d Cir. 2004)); *accord Soros Fund Mgmt. LLC v. TradeWinds Holdings, Inc.*, No. 17 Civ. 3187, 2018 WL 1276879, at *2 (S.D.N.Y. Mar. 12, 2018).[1] "To avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Niagara Mohawk Power Corp.*, 673 F.3d at 104. (internal quotation marks omitted).

Applying the *Dow Jones* factors, denial of declaratory relief is warranted. First, a declaratory judgment is unlikely to serve any "useful purpose." Count One is a factual predicate for Counts Three and Five. Under Counts Three and Five, the Complaint claims that an Event of Default occurred, triggering Defendant's fiduciary obligations such that acceptance of the settlement constitutes breach of the PSA and breach of Defendant's fiduciary duties, respectively. As Counts Three and Five are dismissed, a declaratory judgment on whether an Event of Default occurred would serve no useful purpose in this lawsuit. Because there is an earlier filed case on the merits of the settlement pending in Minnesota state court -- which will necessarily resolve the duties that U.S. Bank owed to its beneficiaries -- adjudicating here whether an Event of Default occurred and triggered those fiduciary duties could result in inconsistent results.

Second, a declaration that an Event of Default occurred would not "finalize" the underlying controversy between Countrywide and U.S. Bank or Ambac and U.S. Bank. A ruling would not bind all the parties in the Minnesota TIP or New York Action -- Countrywide and its

---

[1] The Second Circuit has explicitly adopted the first two factors, *see Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005), and some Second Circuit cases and district court cases have also mentioned and applied the last three factors. *See, e.g.*, *Niagara Mohawk Power Corp.*, 673 F.3d at 105; *Soros Fund Mgmt. LLC*, 2018 WL 1276879, at *2.

9

successors -- such that a declaratory judgment here would lead to finality. As the Event of Default issue is dependent on whether Countrywide breached loan level representations, the Minnesota lawsuit in which Countrywide is participating is a more effective forum for adjudicating the issue.

Third, incorporating all of the remaining *Dow Jones* factors, this declaratory judgment claim is directly parallel and potentially in conflict with the Minnesota TIP action. The claim here seems to be a "race to res judicata." If successful it would "improperly encroach on the domain" of the Minnesota court, and provide a less effective remedy. *Dow Jones & Co.*, 446 F.3d at 359. The same issues, regarding whether an Event of Default occurred, are squarely before the Minnesota court in the TIP proceeding. In Ambac's objections to U.S. Bank's petition in the Minnesota TIP, Ambac itself stated that it anticipates presenting expert testimony related to "whether U.S. Bank's conduct complied with the applicable standard of care."[2] Ambac's objections also incorporate by reference the entire Complaint in this case. The purpose of a trust instruction proceeding is to provide judicial direction to a trustee in the administration of the trust. Here, with the dismissal of Counts Three and Five, the determination of whether an Event of Default had occurred would be divorced form the consequences of such a ruling. Under these circumstances, the Minnesota court is the better forum and will provide "a more effective remedy." *Id*.

Thus, Count One -- Plaintiff's request for declaratory relief with respect to an Event of Default -- is dismissed.

---

[2] The Court may take judicial notice of the filings in the Minnesota TIP. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (courts may take judicial notice of court filings to establish that certain matters have been publicly asserted, not for the truth of the matters asserted therein).

### C. Declaratory Judgment (Count Two)

In Count Two, Ambac seeks a declaratory judgment that U.S. Bank must account for and distribute recoveries under the PSA. The PSA requires U.S. Bank to distribute recoveries -- amounts received from defaulted mortgage loans that have already been liquidated -- to certificate holders based on the Class Certificate Principal Balance of each class of certificates. Prior to distributing recoveries, the PSA requires that U.S. Bank write-up the Class Certificate Principal Balance of each class of senior certificates by the amount of any recoveries, pro rata based on realized loss previously allocated to each class of those certificates.

To the extent that Plaintiff seeks declaratory relief as to past distributions, Count Two is duplicative of Count Four and dismissed on that basis. *See Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 312 (S.D.N.Y. 2010) (dismissing declaratory judgment claim as duplicative of breach of contract claim); *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) (same).

To the extent that Plaintiff seeks declaratory relief as to future distributions, the request is conditioned on the Minnesota court's approval of the settlement agreement and is therefore hypothetical and denied. *See Clapper,* 568 U.S. at 413. Also, considering the *Dow Jones* factors, the Court declines to exercise its discretion to adjudicate the claim. Should the Minnesota court approve the settlement, U.S. Bank requests that the Minnesota court evaluate the proper administration and distribution of the proceeds from the settlement under the PSA. As the Minnesota TIP is likely to resolve the question of proper distribution of recoveries under the PSA, a declaratory judgment here is unlikely to serve a useful purpose, will not finalize the controversy, and will encroach on the state court's domain. As discussed above, the Minnesota

TIP stands to provide a more effective remedy.  *See Niagara Mohawk Power Corp.*, 673 F.3d at 105.  Ambac's request for a declaratory judgment on the treatment of recoveries is denied.

### D. Breach of Contract (Count Four)

Count Four alleges breach of contract on the basis that U.S. Bank failed to correctly account for recoveries pursuant to the PSA.  The Complaint alleges that U.S. Bank's improper allocation of recoveries "caused Ambac harm because it has impacted the amount and timing of insurance claims payments Ambac has paid and deferred."

The Complaint adequately alleges a breach of contract claim for U.S. Bank's failure to distribute recoveries under the PSA.  To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (applying New York law).  Only the last element is at issue here.

Defendant argues that the breach of contract claim should be dismissed because Ambac has not alleged any actual damages.  Although a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference" that he suffered damages as a result of the breach, *Iqbal*, 556 U.S. at 678, it need not, at this stage, "specify the measure of damages nor to plead [specific] proof of causation."  *LivePerson. Inc. v. 2417 Customer, Inc.*, 83 F. Supp. 3d 501, 516 (S.D.N.Y. 2015) (quotation omitted).  "The exact magnitude of damages caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage."  *Int'l Council of Shopping Centers, Inc. v. Info Quarter, LLC*, No. 17 Civ. 5526, 2018 WL 4284279, at *7 (S.D.N.Y. Sept. 7, 2018); *see Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G.*

*Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract action does not justify dismissal under Rule 12(b)(6)).

The Complaint sufficiently alleges damages. The Complaint alleges that the PSA required U.S. Bank to distribute recoveries based on the Class Certificate Principal Balance of each class of certificates. Under the PSA, U.S. Bank must "write up" Class Certificate Principal Balances of each class of senior certificates by the amount of recoveries, pro rata based on the realized loss previously allocated to each class of those certificates. The Complaint alleges that U.S. Bank failed to write up the certificates according to the terms of the PSA. The Complaint further alleges that where U.S. Bank did write up the Class Certificate Principal Balance of the certificates, it did so incorrectly based on the portion of the deferred Ambac policy claims, rather than all realized loss allocated to those certificates as required under the PSA. As a result of U.S. Bank's breach, the Complaint sufficiently alleges that Ambac suffered damages because the breach "impacted the amount and timing of insurance claims payments Ambac has paid."

To the extent, however, that Ambac's damages are contingent on execution of the settlement agreement, the breach of contract claim based on U.S. Bank's failure to distribute recoveries is dismissed for lack of standing for the reasons discussed above.

Defendant argues that Count Four must be dismissed because once all the other claims are dismissed, the damages attributable to Count Four are insufficient to meet the amount in controversy requirement. This argument is incorrect, and the amount in controversy is satisfied. For purposes of diversity jurisdiction, the amount in controversy is measured "as of the date of the complaint. Once jurisdiction has attached, it cannot be ousted by subsequent events," such as dismissal of claims that lowers the amount in controversy allegation below the jurisdictional threshold. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003);

*accord Timoshenko v. Gu*, No. 17 Civ. 2268, 2017 WL 10221327, at *6 (S.D.N.Y. Aug. 28, 2017); *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 507 (2d Cir. 2005) (citing *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62-63 (2d Cir. 1999)) (holding that summary judgment dismissing one or more aggregated claims does not defeat jurisdiction even when it reduces the amount in controversy to below the jurisdictional threshold); *accord ErGo Media Capital, LLC v. Bluemner*, No. 15 Civ. 1377, 2015 WL 6442252, at *5 (S.D.N.Y. Oct. 23, 2015) (stating that a court "will not reevaluate a complaint's amount in controversy allegation for purposes of diversity jurisdiction" even if a dismissed claim lowers the amount in controversy below the jurisdictional threshold).

"Although a plaintiff invoking federal jurisdiction must demonstrate a reasonable probability that the amount in controversy requirement is satisfied, we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Pyskaty v. Wide World of Cars*, *LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (internal quotation marks and citations omitted). A defendant may rebut that presumption by demonstrating "to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.*; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."). Here, the Complaint alleges that the amount in controversy exceeds $75,000, and U.S. Bank has offered no evidence to rebut the presumption of good faith and show that the allegation is incorrect "to a legal certainty." *See id.*[3]

---

[3] The Court respectfully disagrees with Judge Stein in *Ambac 1*, 2018 WL 485976, at *5. *See Scherer*, 347 F.3d at 397; *see also Wolde–Meskel v. Vocational Instruction Project Cmty. Servs.,*

14

## IV. CONCLUSION

For the foregoing reasons, Counts One, Two, Three and Five are dismissed. The motion to dismiss is denied as to Count Four to the extent that Count Four alleges damages for U.S. Bank's failure to distribute past recoveries in accordance with the PSA.

The Clerk of Court is respectfully directed to close the motion at Docket Number 27.

Dated: July 16, 2019
New York, NY

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**

---

*Inc.*, 166 F.3d 59, 62 (2d Cir.1999) ("Satisfaction of the § 1332(a) diversity requirements (amount in controversy and citizenship) is determined as of the date that suit is filed—the 'time-of-filing' rule."); *accord Pensionsversicherungsanstalt v. Greenblatt*, 556 F. App'x 23, 26 (2d Cir. 2014), *as amended* (Mar. 5, 2014) (summary order).